**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

SUSAN LOUISE BONNING,

     Plaintiff,

v.                               2:23-cv-516-JES-NPM

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

**REPORT AND RECOMMENDATION**

Plaintiff Susan Louise Bonning seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings. (Doc. 6),[1] Bonning filed an opening brief (Doc. 11), the Commissioner responded (Doc. 17), and Bonning replied (Doc. 18). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On April 30, 2020, Bonning applied for disability insurance benefits. (Tr. 306-13). And on May 9, 2020, she applied for supplemental security income. (Tr. 299-305). She asserted an onset date of February 1, 2020, alleging disability due to the following: brain surgery-hemangioma, epilepsy, supraventricular tachycardia, severe depression, anxiety, neurological issues, COPD, compression fractures in

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

back at L1 and T12, and hearing issues. (Tr. 94, 111, 128, 148). As of the alleged

onset date, Bonning was 58 years old with some college education. (Tr. 93, 110, 127,

333). She previously worked as an office assistant and as a realtor. (Tr. 107, 124,

144, 164, 333, 361).

On behalf of the administration, a state agency [5] reviewed and denied

Bonning's applications initially on November 5, 2020, and upon reconsideration on

March 12, 2021. (Tr. 91-126, 127-68). At Bonning's request, Administrative Law

Judge (ALJ) Flor M. Suarez held a hearing and, on May 26, 2022, issued an

unfavorable decision finding Bonning not disabled. (Tr. 10-29, 49-90). Bonning's

timely request for review by the administration's Appeals Council was denied. (Tr.

1-3). Bonning then brought the matter to this court, and the case is ripe for judicial

review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step

process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not,
> whether the claimant has a severe impairment or combination of
> impairments; (3) if so, whether these impairments meet or equal an
> impairment listed in the Listing of Impairments; (4) if not, whether the
> claimant has the residual functional capacity ("RFC") to perform [her] past

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination
whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Bonning had not engaged in substantial gainful activity since February 1, 2020, the alleged onset date. (Tr. 13). At step two, the ALJ characterized Bonning's severe impairments as: degenerative disc disease of the lumbar, cervical, and thoracic spine; supraventricular tachycardia; cerebral hemangioma resection; and seizure disorder (without cognitive conditions). (Tr. 13). At step three, the ALJ determined Bonning did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and

> 416.967(a) except she can never climb ladders, ropes or scaffolds, or crawl. She can occasionally climb ramps or stairs, and stoop. She may frequently, bilaterally, overhead reach. She is limited to only occasional concentrated exposure to extreme heat, cold, wetness, humidity, excessive very loud noise [such as the volume of a jack hammer], excessive vibration, bronchial irritants such as noxious fumes, odors, dust and gases, poorly ventilated areas, dangerous moving machinery, and unprotected heights.

(Tr. 22). Relying on a vocational expert's testimony, the ALJ found that Bonning had past relevant work, including work as an "office manager/clerk" (DOT #219.362-010).[6] Although this is a "light" occupation, the ALJ found Bonning performed it as a sedentary job. Thus, the ALJ concluded Bonning remained able to work as an officer manager/clerk as actually performed. (Tr. 28-29).

For purposes of the Act, the ALJ concluded Bonning was not disabled from February 1, 2020, the alleged onset date, through May 26, 2022, the date of the decision. (Tr. 29).

## II.   Analysis

Bonning's appeal presents the following issues for review:

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

(1)   Whether the ALJ failed to obtain sufficient evidence about Bonning's past work; and

(2)   Whether the ALJ properly assessed Bonning's headaches at steps two and four of the sequential evaluation.

## A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the

ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The ALJ did not commit reversible error by classifying Bonning's past relevant work as sedentary.

Bonning has past relevant work as an office manager. Although it is clear this job required her to lift and carry various files and equipment, the weight of such objects is not. In a work-history report, Bonning claimed her office job required her to frequently lift between ten and twenty pounds. (Tr. 361-62). But during the hearing, she testified that she usually lifted and carried boxes up to only five pounds.

A vocational expert testified at the hearing that Bonning's prior job would match the "office manager" position in the DOT, which is classified as "light" work. And the expert explained that if Bonning had lifted ten to twenty pounds (as reflected in the work history report) she would have performed the office-manager position at a light exertion level. But Bonning's hearing testimony of lifting only five pounds placed her past relevant work below the ten-pound threshold for sedentary work.[7]

---

[7] Sedentary work "involves lifting no more than 10 pounds at a time[.]" 20 C.F.R. §§ 404.1567(a); 416.967(a). However, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b).

(Tr. 81). The ALJ asked the vocational expert to apply Bonning's hearing testimony for the lift-and-carry requirement. (Tr. 81). And with that, Bonning's past work—as actually performed—was at a sedentary level. Bonning's attorney stated he had no objection to this classification. (Tr. 82).

The ALJ then proposed a hypothetical. The ALJ asked the vocational expert whether a hypothetical claimant with Bonning's RFC could perform her past work at a "sedentary" exertion. The vocational expert explained she could, but only as it was actually performed by Bonning and not as generally performed in the economy. (Doc. 84). Consequently, the ALJ concluded Bonning had past relevant work as an "office manager/clerk." And that while this is generally a "light" occupation, Bonning performed her work at a sedentary level and, thus, remained able to work as an officer manager/clerk as actually performed. (Tr. 28-29).

Bonning takes issue with the ALJ's finding. She suggests the ALJ should have further developed the record about the lift-and-carry requirements of her prior work as she performed it. And she otherwise argues the ALJ should have adopted the lift-and-carry function as described in the work-history report rather than her hearing testimony. Had the ALJ done so, the argument goes, Bonning's past work would have been performed at a "light" exertion. Since the RFC limits her to a limited range of sedentary work, she would be unable to perform her past work, and the ALJ's decision would need to be reversed. The court, however, should find no error.

Bonning seeks to frame her argument as the ALJ's failure to develop an adequate record about her office position. But this has no merit. The record included the work-history report and Bonning's hearing testimony, which collectively describe the demands of her past relevant work. The ALJ also solicited vocational-expert testimony regarding Bonning's past work. This is a sufficient record. *See Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 900 (11th Cir. 2019) ("The Work History Report, the testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant's] past relevant work—both as she performed it herself, and as it is generally performed."); *Crooms v. Kijakazi*, No. 1:21-cv-36-CWB, 2023 WL 6377299, *7 (M.D. Ala. Sept. 29, 2023) (finding "there was sufficient information about the demands of Plaintiff's past work" when the ALJ considered her work-history report, her testimony about her past work, and the vocational expert's assessment).

To be sure, substantial evidence supports the ALJ's decision. As discussed, substantial evidence "is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Bonning testified during the hearing that her office-manager position required her to lift up to five pounds. Given her first-hand testimony, a reasonable person would accept this evidence as adequate to conclude that Bonning lifted no more than ten pounds during her past

work. And when an ALJ's decision is supported by substantial evidence, the court cannot alter it. 42 U.S.C. § 405(g).[8]

Even if the ALJ did err, it is inconsequential because Bonning waived any objection to this issue. After instructing the vocational expert to apply Bonning's hearing testimony, the vocational expert concluded the job was performed at the sedentary exertion level. (Tr. 81). With this established, the ALJ immediately asked Bonning's counsel whether she had "any objections to the classification of [Bonning's] past work." (Tr. 81). After asking the vocational expert a few follow-up questions, Bonning's counsel stated she had no objection. (Tr. 82). She cannot object for the first time here. *See McDaniel v. Kijakazi*, No. 22-cv-21201, 2023 WL 5510277, *14 (S.D. Fla. Aug. 10, 2023), *report and recommendation adopted*, 2023 WL 5507774 (Aug. 25, 2023) ("Several courts have found that a claimant's failure to object or raise an argument before the ALJ relative to her past relevant work forecloses the claimant's ability to raise the issue for the first time on appeal."). Thus, there is no reversible error on this point.

---

[8] Because the ALJ applied the work-history report for the past work's sit/stand function but not the lift-and-carry function, Bonning also argues the ALJ cherry-picked evidence. But Bonning's hearing testimony did not contradict or clarify her earlier description of the sit/stand functions of her role. The work-history report indicated she would sit approximately six hours per day in her office-manager role, whereas she testified at the hearing that it "varied" and she could not "really give [] a certain amount of time." (Tr. 78-79).

**C.   The ALJ's step-two analysis and RFC are supported by substantial evidence.**

At step two of the sequential evaluation, the ALJ labeled Bonning's headaches/migraines as a non-severe impairment. She explained that Bonning's migraines, and other non-severe impairments, "were properly controlled by adherence to recommended medical management and medication compliance." (Tr. 14). Bonning claims this brief analysis is insufficient and constitutes reversible error.

The Eleventh Circuit has described step two of the sequential evaluation "as a 'screening' or 'filter' to eliminate groundless claims." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). As such, this step "requires only a finding of at least one severe impairment to continue on to the later steps." *Id.* (internal citation and punctuation omitted). Here, the ALJ found several severe impairments. (Tr. 13). So even if Bonning's headaches were severe, as she claims, "the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis[.]" *Tuggerson-Brown*, 572 F. App'x at 951; *see also Felker v. Comm'r of Soc. Sec.*, No. 2:22-cv-221-KCD, 2023 WL 2986246, *3 (M.D. Fla. Apr. 18, 2023) (affirming the ALJ's decision regardless of any mistake at step two about the severity of claimant's mental limitations because the ALJ found several other severe impairments). So the ALJ's step-two analysis does not warrant remand.

But Bonning also claims the ALJ's analysis of her headaches at step four was inadequate. Indeed, finding an impairment non-severe at step two does not excuse

an ALJ from considering the effects of its limitations at step four. When assessing the RFC at step four, the ALJ must consider all impairments—severe and non-severe. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

The ALJ expressed that she "thoroughly considered [the] nonsevere impairments . . . in determining [Bonning's] residual functional capacity." (Tr. 14). She also emphasized that, in formulating the RFC, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 22). More substantively, the ALJ recounted Bonning's claim that her migraines "can last up to three days" and her testimony that "she has a prescription for her migraines which helps." (Tr. 23). After consideration, the ALJ concluded: "Due to a history of nonsevere headaches and reduced hearing, the undersigned limited [Bonning] to occasional concentrated exposure to excessive very loud noise (such as the volume of a jackhammer), excessive vibration, dangerous moving machinery, and unprotected heights." (Tr. 26, 27, 28). Thus, the ALJ considered Bonning's headache limitations and imposed limitations in the RFC to accommodate.

Bonning argues this analysis is insufficient. She feels the ALJ failed to consider all the limitations caused by her headaches, such as "auras, blurred vision, light sensitivity, vision loss, and nausea." (Doc. 11 at 11). And the limitations the

ALJ did impose, the argument goes, "are only aimed at avoiding migraines" but do nothing to account for when one occurs. (*Id.*).

Substantial evidence supports the RFC. As the ALJ stated, the record establishes that medication has provided Bonning relief, including consistent reports that her headaches are stable and "much better," and she routinely reported "no new headaches" after beginning the treatment. (Tr. 772, 792, 811, 827-29, 831, 837, 839, 849, 855). She also testified during her hearing that the medication helps when a headache occurs. (Tr. 65). That Bonning's medication provides her relief supports the ALJ's decision. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1211–12 (11th Cir. 2005) (substantial evidence supported the ALJ's discount of the claimant's subjective complaints when "the ALJ articulated that although [claimant] was treated for anxiety, he reported feeling better after being treated with medications"); *Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x 634, 637 (11th Cir. 2017) (substantial evidence supported the ALJ's conclusion that treaters' opinions were not supported by the record because "[m]edical records showed that [claimant] experienced improvement with medication and therapies").

Bonning also repeatedly denied any blurred vision or transient loss of vision, and she often appeared coordinated, alert, and oriented on examination. (Tr. 572, 709, 755, 772, 792, 811, 831, 841-423, 849, 855, 942, 947-48).[9] She testified that

---

[9] Notably, each of these reports occurred in 2021, after the administration initially denied

she is able to drive (Tr. 60), which is inconsistent with any vision problems, and that she does not experience any nausea. Finally, the ALJ observed that, although Bonning stated her balance is an issue, she has not used or been prescribed an assistive device. (Tr. 23). These inconsistencies between Bonning's reported symptoms and the medical evidence support the RFC. *See* SSR 19-4p, 2019 WL 4169635, *7-8 (S.S.A. Aug. 26, 2019) (when considering headache disorders in a claimant's RFC "consistency and supportability between reported symptoms and objective medical evidence is key").

Bonning still protests that the imposed restrictions are only aimed at preventing her headaches but do nothing for when one occurs. This point is unmoving. The ALJ's identification of Bonning's headaches as a non-severe impairment does not necessitate a limitation in the RFC, and an ALJ cannot be expected to consider every possible limitation. *See Kindred v. O'Malley*, No. 3:22-cv-502-CWB, 2024 WL 235173, *6 (M.D. Ala. Jan. 22, 2024) ("[I]mpairments and limitations are not the same thing. …[W]hile an ALJ is required to consider all impairments, he is not required to consider every possible limitation proposed by the administrative medical findings."). Given the record, substantial evidence arguably would have supported an RFC without *any* limitations for Bonning's headaches. Even so, after considering Bonning's headaches at step four, the ALJ included

---

Bonning's application.

limitations in the RFC to account for triggers and symptoms.[10] And Bonning "has not shown that her migraine headaches caused additional work-related limitations or that the ALJ erred by concluding that she had the residual functional capacity to perform" sedentary work. *Wright v. Comm'r of Soc. Sec.*, No. 0:23-cv-60680, 2024 WL 1178143, *6 (S.D. Fla. Feb. 5, 2024)

Finally, Bonning's reliance on *Seymore v. Comm'r of Soc. Sec.*, No. 2:23-cv-70-KCD, 2023 WL 6619439 (M.D. Fla. Oct. 11, 2023) is misplaced. There, the court remanded to the administration for further proceedings because the ALJ neglected to discuss the claimant's headaches *anywhere* in the step-four analysis. *Id.* at *3. As discussed, that is not the case here.

Ultimately, Bonning bears the burden of showing she cannot perform her past work as actually performed. *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. 2011). She fails to carry this burden.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to

---

[10] Of note, the ALJ arrived at a more restrictive RFC than each doctor who provided such an assessment. (Tr. 26-27).

sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

Recommended on July 31, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**